## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 28 2016, 8:25 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael S. Washington,<br>*Appellant-Defendant,*<br><br>*v.*<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 28, 2016<br><br>Court of Appeals Case No.<br>84A01-1504-CR-140<br><br>Appeal from the Vigo Superior Court<br>The Honorable Michael J. Lewis, Judge<br><br>Trial Court Cause No. 84D06-0702-FA-385 |

**Bradford, Judge.**

# Case Summary

[1]     When Appellant-Defendant Michael Washington married Jackie Washington, Jackie's daughter A.F. was two years old. When A.F. was four, Washington

began fondling her breasts and vagina, and, when she was ten, he began performing oral sex on her. Several years later, after A.F. went to the authorities and reported what Washington had done to her, Appellee-Plaintiff the State ultimately charged him with five counts of child molesting, three of which were based on his molestation of A.F. and covered three non-overlapping time periods.

[2] During jury deliberations at Washington's trial, the jury asked the trial court if it was required to find Washington guilty of all three counts if it found him guilty of one. The trial court replied that it was for the jury to determine. The jury then indicated that it was deadlocked, and the trial court clarified that each count was separate and that it could find Washington guilty of all three, not guilty of all three, or guilty on some and not guilty on others. The jury found Washington guilty of one count of Class A felony child molesting, and the trial court sentenced him to twenty years of incarceration. Washington contends that the State produced insufficient evidence to sustain his conviction and that the trial court abused its discretion in responding to the jury's inquiries. Because we disagree, we affirm.

## Facts and Procedural History

[3] A.F. was born August 4, 1982, to Jackie and her first husband. Jackie subsequently married Washington when A.F. was approximately two years old. Washington, who cared for A.F. while Jackie worked, began fondling A.F.'s breasts and vagina when A.F. was four. When A.F. was ten, Washington

began performing oral sex on her, which continued until A.F. was nineteen. A.F. testified that Washington fondled her daily and performed oral sex on her twelve to thirteen times a week throughout this period.

[4] In 2005, A.F. (by this time twenty-two or twenty-three years old), along with her sister and Jackie's niece, gave statements to police in which they alleged that Washington had molested them. When Jackie's mother confronted Washington, he admitted that he had molested "them[,]" apologized, and gave no reasons for doing so "[e]xcept for the beer." Tr. pp. 201, 202. Washington also admitted to A.F.'s ex-husband that he had molested "the girls [and] that he was sorry and that he was gonna get help." Tr. p. 224. On February 1, 2007, the State charged Washington with three counts of Class A felony child molesting. On September 5, 2013, in an amended charging information, the State charged Washington with four counts of Class B felony child molesting and one count of Class A felony child molesting. Counts III, IV, and V involved the alleged molestation of A.F., alleging sexual intercourse or deviate sexual conduct that occurred in Count III between August 4, 1992, and June 30, 1994; in Count IV between July 1, 1994, and June 30, 1996; and in Count V between July 1, 1996, and August 3, 1996.

[5] Washington's jury trial began on February 18, 2015. During jury deliberations, the jury asked the trial court, "on counts 3, 4 & 5, if we find him guilty of one, does that make him guilty of all three?" Appellant's App. p. 218. The trial court replied, "That is for you as the jury to determine." Appellant's App. p. 218. Later, the jury sent the following to the trial court: "We are 'stuck' with a

final tally of 9-3.  Where do we go from here?"  Appellant's App. p. 219.  In response, the trial court called the jury into court and the following exchange occurred:

| | |
|---|---|
| THE COURT: | Okay we're back on the record, State of Indiana versus Michael Washington[.]  Have a question from the jury.  Um, we are stuck with a final tally of, final tally of nine to three where do we go from here?  Well is there anything else the Court could do or the attorney's [sic] could do to assist you?  Do we have a foreperson? |
| Juror: | Yes. |
| THE COURT: | Is there anything else we could do to assist you? |
| Juror: | Yeah, um… |
| THE COURT: | I, I gave you that answer.  We can't answer any further other than if you find guilty on number three does that mean automatic four and five, those are all, as the prosecutor explained to you, those are all separate counts.  So they could be count 1, everything could be not guilty, everything could be guilty, you could have not guilty on some, guilty on others.  That's how… |
| Juror: | Okay. |
| THE COURT: | Is there anything else we can do?  Other than that question? |
| Juror: | I can't think of anything else, anyone else?  We can not [sic] think of anything. |
| THE COURT: | Nothing that will help this issue come to a decision? |

Juror:            We were about there.

Tr. pp. 426-27.

After completing deliberations, the jury found Washington guilty of Count V and not guilty of the other four counts. On March 20, 2015, the trial court sentenced Washington to twenty years of incarceration.

# Discussion and Decision

## I. Whether the State Produced Sufficient Evidence to Sustain Washington's Conviction

Washington contends that the State produced insufficient evidence to sustain his conviction for Class A felony child molesting. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor resolve questions of credibility. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995). We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Id.* If from that viewpoint there is evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Spangler v. State*, 607 N.E.2d 720, 724 (Ind. 1993).

Washington argues, essentially, that A.F.'s testimony that she was molested twelve to thirteen times per week from around 1992 to around 2001 is too vague to establish that she was molested at least once between July 1 and August 3, 1996. The jury, however, was free to believe all, none, or any part of A.F.'s testimony, as it saw fit. Put another way, the jury's apparent refusal to

credit A.F.'s testimony that she was molested before July 1, 1996, or after August 3, 1996, does not require it to discredit *all* of her testimony. The jury was within its prerogative to conclude that A.F.'s testimony established that she was molested at least one time between July 1 and August 3, 1996, and not anytime else. Washington's argument amounts to nothing more than an invitation to reweigh the evidence, which we will not do.

[9] Washington also contends that the incredible dubiosity rule mandates reversal of his conviction. "Appellate courts may, however, apply the 'incredible dubiosity' rule to impinge upon a jury's function to judge the credibility of a witness." *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007) (citing *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002)).

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Love*, 761 N.E.2d at 810 (citations omitted).

[10] At the very least, the incredible dubiosity rule does not apply in this case because A.F. was not the sole witness to present evidence that Washington molested her. Jackie's mother and A.F.'s ex-husband both testified that Washington, after being formally accused of molestation, admitted to molesting "them" or "the girls," respectively. Because A.F. was not the sole witness

whose testimony tended to support Washington's conviction, the incredibly dubiosity rule does not apply, and we need not address his argument in this regard further.[1]

## II. Whether the Trial Court's Response to the Jury's Impasse was Improper

[11] Washington contends that the trial court's response to the jury's questions regarding their impasse was erroneous, necessitating reversal. The State argues, *inter alia*, that Washington has waived this claim for appellate review. In order to preserve a claimed error in the trial court's response to a jury question, at the very least the party must object, which Washington did not do. *See Foster v. State*, 698 N.E.2d 1166, 1169 (Ind. 1998) (concluding that claim regarding response to jury question was waived where defendant did not object to trial court's decision not to answer jury question and did not propose a response or supplemental jury instructions). Although Washington contends that he was denied the opportunity to object outside the presence of the jury to the trial court's proposed responses, there is nothing in the record to indicate that this occurred. "The appellant has the burden of establishing the record necessary to his claim." *Id.* at 852. Because the record is devoid of any indication of an

---

[1] Finally, relying only on a case from Iowa, Washington contends that we should subject the jury's allegedly inconsistent verdicts to heightened scrutiny. Even if we assume that the jury's verdicts were, in fact, inconsistent, such a claim is not a viable issue on appeal in Indiana, *see Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010), as Washington himself acknowledges.

objection by Washington, we conclude that the issue is waived for appellate consideration.

[12] Washington, however, argues that even if he waived the issue below, the trial court's responses to the jury's questions amounted to fundamental error.

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. *See, e.g.*, *Trice v. State*, 766 N.E.2d 1180, 1182 (Ind. 2002); *Hayworth v. State*, 904 N.E.2d 684, 694 (Ind. Ct. App. 2009). The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009). This exception is available only in "egregious circumstances." *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003).

*Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).

> A "finding of fundamental error essentially means that the trial judge erred ... by not acting when he or she should have," even without being spurred to action by a timely objection. *Whiting v. State,* 969 N.E.2d 24, 34 (Ind. 2012). An error blatant enough to require a judge to take action *sua sponte* is necessarily blatant enough to draw any competent attorney's objection. But the reverse is also true: if the judge could recognize a viable reason why an effective attorney might not object, the error is not blatant enough to constitute fundamental error.

*Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014).

[13]     Indiana Jury Rule 28 provides as follows:

> If the jury advises the court that it has reached an impasse in its deliberations, the court may, but only in the presence of counsel, and, in a criminal case the parties, inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the court, after consultation with counsel, may direct that further proceedings occur as appropriate.

[14]     According to Washington, the jury's questions about Counts III, IV, and V related to legality of inconsistent verdicts, and the trial court's response that the jury could find Washington guilty or not guilty of any or all of the charges against him amounted to improper encouragement to deliver inconsistent verdicts. Washington's basic premise, however, is false. Quite simply, there is no logical inconsistency in finding him guilty of only one of the three charges against him. As explained previously, the three charges against Washington arose from his alleged molestation of A.F. during three, non-overlapping time periods. The jury was free to find that Washington molested A.F. during only one of those three time periods (or none, two, or all three, for that matter) if it saw fit, and it did. Contrary to Washington's contention, there is no logical inconsistency between the jury's verdicts in this case. Consequently, the trial court's response to the jury's questions, even if it had encouraged a split verdict, did not amount to fundamental error.

[15]     The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.